2010 Ark. 356

**George E. REPKING, Kelly Repking, Estate of Christina Springs, Appellants,**

v.

**Brad LOKEY and Randy Reed, Appellees.**

**No. 09–1024.**

Supreme Court of Arkansas.

Sept. 30, 2010.

---

Norman Douglas, Norwood, Alison Lee, Rogers, for appellant.

Wyman R. Wade Jr., Lee Matthew Davis, Fort Smith, for appellee.

ROBERT L. BROWN, Justice.

The appellants in this case are George Repking, administrator of Christina Springs's estate and Kelly Repking on behalf of herself and her minor daughter, Paige Garner. The appellees are Brad Lokey, a patrolman with the Fort Smith Police Department, and Randy Reed, then Fort Smith Police Chief. The issues raised involve whether a summary judg-

ment entered by the circuit judge correctly determined that the appellees are not liable under federal or state statutory or constitutional law. We hold that the judgment was correct, and we affirm.

On January 21, 2005, Christina Springs; her sister, Kelly Repking; and Ms. Repking's daughter drove to Sutton Elementary School in Fort Smith because Thomas Springs, Christina Springs's husband, was attempting to remove one of the couple's six children from the school. Chantelle Norwood, the oldest daughter of Christina and Thomas, called Christina to the school after dropping off three of her brothers. At the time, Christina lived ₂at the Battered Women's Shelter in Fort Smith. Christina also had several orders of protection against Thomas because of prior instances of violence.

That morning, Officer Brad Lokey was dispatched to the school. When Officer Lokey arrived, Thomas advised him that there was an order of protection outstanding. Officer Lokey was given three orders, dated January 5, 18, and 19, 2005, respectively. Unable to determine which order was in effect, Officer Lokey advised Thomas not to remove the child from the school. The child was later returned to the school.

After Thomas was told to leave the school property, Christina arrived with her sister and niece. Appellants assert that Officer Lokey then agreed to follow Christina and Ms. Repking back to the Battered Women's Shelter. Officer Lokey, however, testified by deposition that he only agreed to follow them for a short distance and not all the way back to the shelter. All parties agree that the Springs party left the school with Officer Lokey following. After determining that the vehicle was not being followed, Officer Lokey went to Kimmons Junior High School in Fort Smith to determine if Thomas had visited his children Officer Lokey believed to be enrolled at that school.

Christina and Ms. Repking continued driving toward the shelter. They traveled approximately four miles further to the intersection of Greenwood Street and Rogers Avenue in Fort Smith. At that intersection, Thomas saw Christina's vehicle and crossed opposing lanes of traffic in order to ram her vehicle. After ramming her car, he got out of his car, walked over to Christina's car, and began beating Christina. He then returned to his car and ₃got a knife, which he used to stab Christina to death while she was still in the car. Ms. Repking and her daughter suffered injuries from the car accident but were not beaten or stabbed by Thomas.[1]

The appellants brought suit against Officer Lokey and Police Chief Reed under both federal and state constitutions, § 1983 of the United States Code, and the Arkansas Civil Rights Act. Specifically, they allege that Officer Lokey deliberately put Christina in harm's way. They further raise violations of the wrongful death and survival statutes. The circuit judge granted the appellees' motion for summary judgment after determining that there was no special relationship which created an affirmative duty to protect Christina from Thomas, that the police department had not created the danger, that there was no Ninth Amendment unenumerated right violated, and that the appellants, as individuals, were entitled to qualified immunity under state law as employees of a governmental entity.

The pertinent findings and conclusions in the letter opinion supporting the judgment follow:

1. Thomas Springs was tried and convicted of capital murder and currently sits on death row. For the facts in that case, see *Springs v. State*, 368 Ark. 256, 244 S.W.3d 683 (2006).

Plaintiff contends that Officer Lokey put Christina Springs in significant immediate harm by failing to arrest Thomas Springs and by failing to follow the Repking vehicle. Even if Officer Lokey should have arrested Thomas Springs and should have followed the vehicle to the Women's Shelter, his acts can only be described as negligent. The 8th Circuit Court of Appeals has held that "mere negligence can never be conscience-shocking and cannot support a claim alleging a violation of substantive due process rights."

Furthermore, a plaintiff must usually show that the state actor intended to harm him, but in some cases, proof of deliberate indifference will satisfy the substantive due process threshold. In this situation, no pleading or affidavit on behalf of plaintiff alleges that either defendant intended to harm Christina Springs, nor does Officer Lokey's deposition reflect his observance of any behavior that would have required him to arrest Thomas Springs. While Officer Lokey could have followed the Repking vehicle to the Women's Shelter out of caution, his decision not to follow the car the entire four miles does not amount to a deliberate attempt to cause harm or act indifferently to Christina Springs' situation. Accepting all facts alleged in plaintiff's complaint and affidavits are true, the defendants' conduct does not rise to the level of malicious, willful or wanton behavior; therefore, there is no valid claim under 42 U.S.C. § 1983.

Appellants now assert on appeal that Officer Lokey and the City of Fort Smith, through then Police Chief Reed, are civilly liable for the death of Christina Springs.

## I. Summary Judgment

The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment. A trial court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Brock v. Townsell*, 2009 Ark. 224, 309 S.W.3d 179, 185. The burden of proof shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment, and the opposing party must demonstrate the existence of a material issue of fact. *Id.* After reviewing the undisputed facts, the trial court should deny summary judgment if, under the evidence, reasonable minds might reach different conclusions from the same undisputed facts. *Id.* On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party leave a material question of fact unanswered. *Id.* This court views the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* This review is not limited to the pleadings but also includes the affidavits and other documents filed by the parties. *Id.; see also* Ark. R. Civ. P. 56(c).

The issue of whether a party is immune from suit in a summary-judgment procedure is purely a question of law, and this court reviews that issue on appeal de novo. *City of Fayetteville v. Romine*, 373 Ark. 318, 321, 284 S.W.3d 10, 13 (2008); *Baldridge v. Cordes*, 350 Ark. 114, 85 S.W.3d 511 (2002).

## II. Section 1983 Liability

Appellants contend that Officer Lokey is liable in his official capacity for what happened to Christina under federal statutory law. *See* 42 U.S.C. § 1983. To establish a violation of § 1983, the plaintiff

must show that the deprivation (1) was a right secured by the United States Constitution and laws of the United States, and (2) was caused by a person or persons acting under the color of state law. *Tipler v. Douglas County, Nebraska*, 482 F.3d 1023 (8th Cir.2007).

 Local governing bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the United States Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decision-making channels. *Id.* at 690–91, 98 S.Ct. 2018. Generally, an isolated incident of police misconduct by subordinate officers is insufficient to establish municipal policy or custom. *Wedemeier v. City of Ballwin*, 931 F.2d 24, 26 (8th Cir.1991). A custom or usage is demonstrated by:

(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policy-making officials after notice to the officials of that misconduct; (3) the plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof

that the custom was the moving force behind the constitutional violation. *Ware v. Jackson County, Mo.*, 150 F.3d 873 (8th Cir.1998).

 On January 21, 2005, Officer Lokey was a patrolman for the Fort Smith Police Department and had no policy-making authority at that time. The internal investigation "by the department" determined that he had not violated department policy or procedure and that the department specifically did not have a policy authorizing police officers to provide private individual protection. The investigation further determined that had Officer Lokey engaged in misconduct or violated a policy, this one instance alone would not support municipal liability. Accordingly, as an initial matter, it does not appear that a custom or policy was involved in Officer Lokey's actions.

 We turn then to the alleged constitutional violations. Appellants do not clearly define what constitutional right Officer Lokey allegedly deprived Christina of that day. They state that the thrust of their complaint is that Officer Lokey promised to provide police protection to Christina and then failed to provide that protection which led directly to the injuries. The United States Supreme Court has held that the Due Process Clause is not implicated by a *negligent* act of an official which causes an unintended loss of or injury to life, liberty, or property. *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Moreover, the court has held that nothing in the language of the Due Process Clause itself requires a law enforcement officer to protect the life, liberty, and property of its citizens against invasion by private actors. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). In *DeShaney,* the Court said:

The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. A State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

*Id.* at 195–197, 109 S.Ct. 998.

On the other hand, it is clear that Officer Lokey was under an obligation to arrest Thomas if a felony had been committed in his presence or if he had probable cause to believe a felony had been committed. Chantelle Norwood states that she informed Officer Lokey that Thomas threatened to kill Christina. Norwood did not hear Thomas make the threat. Rather, the threat was reported to Christina by Stephanie Gordon, a person on the scene who was speaking with Thomas. According to Gordon's affidavit, she told Christina that Thomas said he was going to kill Christina. Gordon states that Officer Lokey was not within earshot when she reported the threat, and Christina simply responded, "he says that all that time, he doesn't mean it." Gordon states she herself did not tell Officer Lokey about the threat. Without question, had Officer Lokey heard Thomas make the threat, he would have been under a duty to arrest Thomas. However, the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its "substantive" manifestations. *Town of Castle Rock, Colo. v. Gonzales,* 545 U.S. 748, 768, 125 S.Ct. 2796, 162 L.Ed.2d 658 (2005).

In short, even if Officer Lokey did know of the threat made by Thomas against Christina, based on second-hand information, his failure to arrest Thomas could not be the basis for liability. Officer Lokey was under no affirmative duty to aid or protect Christina from a private act of violence under the Due Process Clause, which means that clause cannot be the basis for liability under § 1983. There is no basis for liability against Officer Lokey in his official capacity and certainly no basis for liability against Police Chief Reed as he was not personally involved in the incident. We hold that summary judgment was appropriate despite the factual dispute regarding Officer Lokey's knowledge of the threat.[2]

### a. State-created danger

There is an exception to the absence of an affirmative right to safety under the Due Process Clause, and that is the "state-created-danger exception." Under this exception, there is a duty to protect when the state officers affirmatively place a particular individual in a position of danger that he or she would not otherwise have faced. *Davis v. Fulton County, Ark.,* 90 F.3d 1346, 1351 (8th Cir.1996). For such a duty to protect to arise, the actions of the state must create a unique risk of

**2.** We note where the circuit judge looked at maliciousness as a factor for § 1983 liability. While it certainly is a factor under state immunity law, we do not find maliciousness to be a prerequisite for § 1983 liability under federal law or federal jurisprudence.

harm to that person that is greater than the risk faced by the general public. *Id.* In the instant case, the appellants and appellees disagree as to what the correct test is for determining whether the state-created-danger exception is satisfied.

The United States Eighth Circuit Court of Appeals has adopted a five-part test for analyzing this exception. *See Hart v. City of Little Rock,* 432 F.3d 801 (8th Cir.2005). Under *Hart,* a plaintiff must show 1) membership in a limited, precisely definable group, 2) the conduct of state or local officials put them at significant risk of serious, immediate, and proximate harm, 3) the risk was obvious or known to the state or local officials, 4) the officials acted recklessly in conscious disregard of the risk, and 5) in total, the conduct shocks the conscience. *Id.* at 805. The trial court followed the *Hart* criteria in the instant case.

Appellants point to a Ninth Circuit Court of Appeals case, which does not include the shock-the-conscience element as the more correct test. *See Kennedy v. City of Ridgefield, Wash.,* 439 F.3d 1055 (9th Cir.2006). We disagree and find that the *Hart* test, which includes the shock-the-conscience element, is the more appropriate test for this analysis. Accordingly, we hold that the circuit judge was correct to follow it. We further hold that Officer Lokey's actions regarding Christina's safety, even accepting all of the facts in favor of the appellants, did not exhibit deliberate indifference to her plight so as to implicate due-process concerns. Stated differently, we fail to see a genuine issue of material fact that has been presented that Officer Lokey's conduct put Christina at significant risk of serious, immediate, and proximate harm and that he acted recklessly in conscious disregard of the risk so as to shock our conscience. Accordingly, the *Hart* test for a state-created danger is not

satisfied, and the summary judgment stands.

### III. Arkansas Civil Rights Act

Appellants contend that the circuit judge failed to distinguish the Arkansas Civil Rights Act from § 1983 under the federal civil rights act. The appellants further contend that the circuit judge used the wrong standard in analyzing the appellees' immunity under the state act. The circuit judge determined that Officer Lokey and Chief Reed both had immunity under Arkansas Code Annotated section 21–9–301 and that their acts were not malicious. He said:

Additionally, both defendants are employees of governmental entities and are thus entitled to qualified immunity. Under A.C.A. § 21–9–301, a state employee is immune from liability unless the acts occurred within the scope of their employment and the acts were malicious. Neither Chief Reed nor Officer Lokey acted maliciously in regard to Christina Springs' request for aid; therefore, they are both immune from liability.

Appellants argue that the trial court conflated section 19–10–305(a) with section 21–9–301(a). Those two statutes read as follows:

(a) Officers and employees of the State of Arkansas are immune from liability and from suit, except to the extent that they may be covered by liability insurance, for damages for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment.

Ark.Code Ann. § 19–10–305(a) (2007).

(a) It is declared to be public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and all other political subdivisions of the state

and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.

Ark.Code Ann. § 21–9–301(a) (2004).

This court has consistently held that section 21–9–301 provides city employees with immunity from civil liability for negligent acts, but not for intentional acts. *See, e.g., City of Fayetteville v. Romine*, 373 Ark. 318, 321, 284 S.W.3d 10, 13 (2008). Under section 21–9–301, the city and its employees enjoy immunity from liability and from suits for damages except to the extent that the city is covered by liability insurance, or acts as a self-insured for certain amounts as provided by statute. *City of Farmington v. Smith*, 366 Ark. 473, 478, 237 S.W.3d 1, 5 (2006).

We agree with appellants that section 21–9–301(a) does not include a maliciousness element and that it clearly cites an exception as to immunity to the extent of liability insurance. Thus, according to the appellants, the negligent acts of Officer Lokey may be actionable to the extent of liability coverage. We further agree with the point raised by appellants on appeal that when a defendant pleads an affirmative defense of immunity that defendant must plead and prove no liability coverage under this section for purposes of summary judgment. *See, e.g., Vent v. Johnson*, 2009 Ark. 92, 303 S.W.3d 46.

The problem with the appellants' negligence/insurance argument is that it was not made to the trial judge, but it is raised for the first time on appeal. It necessarily follows that the appellants did not obtain a ruling on this point from the circuit judge. The entire emphasis of the appellants' argument before the circuit judge was that Officer Lokey's actions went beyond mere negligence and rose to the higher standard of deliberate indifference. Hence, the negligence/insurance point is not preserved.

Moreover, regarding the point that appellees did not address the Arkansas Civil Rights Act, we disagree. The appellants raised section 16–123–105 of the Arkansas Civil Rights Act as a basis for liability in their complaint. Subsection (c) of that statute states that courts may look to § 1983 and federal and state court decisions interpreting the federal statute "for guidance" in interpreting section 16–123–105. *See also Fegans v. Norris*, 351 Ark. 200, 89 S.W.3d 919 (2002). The circuit judge clearly did so. We have already held in this opinion that no § 1983 violation exists. Similarly, using the Eighth Circuit case of *Ware v. Jackson County, Missouri*, 150 F.3d 873 (8th Cir.1998), we find no widespread pattern of unconstitutional misconduct that would give rise to an Arkansas Civil Rights Act violation.

We hold that there is no reversible error on the point raised that the circuit judge failed to distinguish between § 1983 and the Arkansas Civil Rights Act.

*IV. The Ninth Amendment*

Appellees argue, as a final point, that the "rights to life and safety" are unenumerated rights "retained by the people" under the Ninth Amendment to the United States Constitution. While there may be an interesting scholarly debate about the rights preserved under the Ninth Amendment, the facts before us do not compel resolution of whether there is a right to law enforcement protection under facts comparable to the facts of the case at hand. Appellants do cite a plethora of scholarly articles supporting the proposition that the Ninth Amendment includes the unenumerated right to survival. But more is required in the way of authority for this court to determine whether the

scope of the Ninth Amendment embraces a right protected by the United States Constitution premised on promises of safety and protection. We have often stated that we will not develop an issue for a party on appeal. *See Alexander v. McEwen,* 367 Ark. 241, 239 S.W.3d 519 (2006). This point is without merit.

Affirmed.

SHEFFIELD, J., concurs.

SHEFFIELD, J., concurring.

Although I concur with the result, I would adopt the Ninth Circuit's test that eliminates the "shocks the conscience" element when assessing an alleged state-created danger. The five-part test adopted by the Eighth Circuit is so subjective and difficult to apply that it has rendered the state-created-danger doctrine meaningless. As the majority stated, the five elements of the state-created-danger doctrine are: 1) membership in a limited, precisely definable group, 2) the conduct of state or local officials put them at a significant risk of serious, immediate, and proximate harm, 3) the risk was obvious or known to the state or local officials, 4) the officials acted recklessly in conscious disregard of the risk, and 5) in total, the conduct shocks the conscience. The first four factors should be retained, but I would not require the final element.

An example that clearly illustrates this point is found in the case *S.S. v. McMullen,* 225 F.3d 960 (8th Cir.2000) (en banc). In that case a child was released from state custody and returned to her father, even though the Missouri Division of Family Services knew that the father was allowing the child to have contact with a known pedofile named Joel Griffis. *Id.* at 962. Griffis himself contacted the child's social worker (after the social workers knew his history) and stated that he thought it would be unfair for his contact with the child to be limited. *Id.* at 965 (Gibson, J., dissenting). The child's foster mother told the social workers that the child stated that "she humps with her daddy, Jon" and that she had exhibited inappropriate sexual behaviors numerous times. *Id.* Less than three months after the child was released to her father, Griffis molested her. *Id.* at 966.

The Eighth Circuit, sitting en banc found that the social workers' action in returning the child did not shock the conscience because it amounted to gross negligence. *Id.* at 964. Three judges dissented, stating that the defendant social workers engaged in "reflections upon the risk to which they willfully subjected" the child and that this amounted to a deliberate indifference that should shock the conscience of any court. *Id.* at 969.

If the facts in the *S.S.* case do not shock the conscience of a court, then almost nothing will. In fact, I have been unable to locate any case in which the Eighth Circuit's conscience was shocked. I agree with the Ninth Circuit that language such as "shocks the conscience" is too subjective to be helpful in analyzing an alleged state-created danger. *Kennedy v. City of Ridgefield,* 439 F.3d 1055, 1064–65 (9th Cir.2006).

I do, however, agree with the majority that Officer Lokey's conduct did not put Christina at significant risk of serious, immediate, and proximate harm.

Accordingly, I concur in the result.