JOHN DAN KEMP, Chief Justice
Appellant Dayong Yang, as special administrator of the estate of his deceased son, Le Yang, appeals an order of the Pulaski County Circuit Court granting summary judgment to appellees City of Little Rock, Arkansas; Stuart Thomas; Wayne Bewley; Laura Martin; Linda Wilson; Sharon Martin; Alan Cate; Marquita Dooley; Candace Middleton; Karen Grimm; Gregory L. Summers; Robert Sharp; Frank Scott; and Eddie Rhine ("the City"). For reversal, Yang argues that the circuit court erred in granting summary judgment on his negligence and civil-rights claims. We affirm.
I. Facts
This court provided a full recitation of the facts in City of Little Rock v. Yang , 2017 Ark. 18, 509 S.W.3d 632 (" Yang I "). Yang had filed a wrongful-death action against the City and others over the City's alleged mishandling of a 911 call seeking rescue services for his son. In his third amended complaint, Yang alleged negligence causes of action arising under Arkansas law and civil-rights violations under 42 U.S.C. section 1983, the Fourteenth Amendment to the United States Constitution, and Arkansas law. He also sought compensatory and punitive damages. In Yang I , we affirmed the circuit court's denial of the City's motion for summary judgment on the negligence claims. We held that the City and its employees had failed to plead and prove that it was entitled to municipal immunity. We reversed the circuit court's denial of summary judgment on Yang's negligence claims against MEMS. Id. , 509 S.W.3d 632.
On remand, the City moved for summary judgment on Yang's negligence claims and asserted municipal immunity. Specifically, the City claimed that it had no *397 general-liability coverage under Arkansas Code Annotated section 21-9-301 (Repl. 2016). With its motion, the City submitted affidavits from Bruce Moore, city manager, and Stacey Witherell, human-resources director. In their affidavits, they stated that the City did not possess any general-liability insurance policy that would cover Yang's claims. The City did not seek dismissal of Yang's civil-rights claims in its motion. Yang filed his response to the City's renewed motion for summary judgment and argued that it should be denied because this court had ruled on the City's affirmative defense of municipal immunity, and alternatively, that the City had failed to establish a prima facie entitlement to summary judgment.
On April 13, 2017, the circuit court entered an order granting the City's motion for summary judgment and dismissing the City with prejudice. Yang subsequently filed a motion requesting modification of the circuit court's order. He asked the circuit court to clarify that the City had not been dismissed with prejudice because Yang's section 1983 claims remained pending. The City responded that the circuit court was within its discretion to issue the order dismissing the City with prejudice. On May 25, 2017, the circuit court denied Yang's motion requesting modification of the order. Yang now brings his appeal.[1]
II. Negligence Claims
For his first point on appeal, Yang argues that the circuit court erred in granting summary judgment in favor of the City. Specifically, Yang contends that the City did not prove any entitlement to municipal immunity under Arkansas Code Annotated section 21-9-301 because it failed to prove its lack of general-liability insurance coverage.
A circuit court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. Cannady v. St. Vincent Infirmary Med. Ctr. , 2018 Ark. 35, 537 S.W.3d 259. The burden of proof shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment, and the opposing party must demonstrate the existence of a material issue of fact. Id. , 537 S.W.3d 259. After reviewing the undisputed facts, the circuit court should deny summary judgment if, under the evidence, reasonable minds might reach different conclusions from the same undisputed facts. Id. , 537 S.W.3d 259. On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party leave a material question of fact unanswered. Id. , 537 S.W.3d 259. This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Id. , 537 S.W.3d 259. This review is not limited to the pleadings but also includes the affidavits and other documents filed by the parties. Id. , 537 S.W.3d 259 ; see also Ark. R. Civ. P. 56(c).
The issue of whether a government defendant is immune from suit at the summary-judgment stage is purely a question of law. Repking v. Lokey , 2010 Ark. 356, 377 S.W.3d 211 ; City of Fayetteville v. Romine , 373 Ark. 318, 284 S.W.3d 10 (2008) ; Baldridge v. Cordes , 350 Ark. 114, 85 S.W.3d 511 (2002). On appeal, this court *398 reviews the issue of immunity de novo. Repking , 2010 Ark. 356, 377 S.W.3d 211 ; Cooper Realty Inv., Inc. v. Ark. Contractors Licensing Bd. , 355 Ark. 156, 134 S.W.3d 1 (2003) (stating that the interpretation and application of an Arkansas statute is a question of law, which this court reviews de novo).
The issue here is whether the City enjoys municipal immunity pursuant to Arkansas Code Annotated section 21-9-301, which provides,
(a) It is declared to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, public charter schools, special improvement districts, and all other political subdivisions of the state and any of their boards, commissions, agencies, authorities, or other governing bodies shall be immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.
(b) No tort action shall lie against any such political subdivision because of the acts of its agents and employees.
We have stated that Arkansas Code Annotated section 21-9-301 "establishes ... an immunity defense." Vent v. Johnson , 2009 Ark. 92, at 12, 303 S.W.3d 46, 52 (citing W. Memphis Sch. Dist. No. 4 v. Cir. Ct. of Crittenden Cty. , 316 Ark. 290, 295, 871 S.W.2d 368, 371 (1994) ).
Yang cites Helena-West Helena School District v. Monday , 361 Ark. 82, 204 S.W.3d 514 (2005), for the proposition that the City failed to meet its burden of proving that it had no general-liability coverage. But Yang's argument is misplaced. In Helena-West Helena , Monday sued for slip-and-fall injuries sustained by her son. The school district moved for summary judgment and attached an affidavit claiming it had no general-liability insurance policy that would cover the claim. However, the school district failed to attach a copy of its motor-vehicle policy to its motion. This court affirmed and held that because the school district was required to maintain insurance coverage on its school buses, the school district had failed to attach the required motor-vehicle policy to its motion for summary judgment. Id. , 204 S.W.3d 514.
We have stated that an affidavit stating that there is no general-liability coverage establishes a prima facie entitlement to summary judgment. See City of Malvern v. Jenkins , 2013 Ark. 24, 425 S.W.3d 711. In City of Malvern , two property owners filed suit against the city for damage to a water pipe on their property. The circuit court denied the city's motion for summary judgment on immunity grounds. We reversed and remanded, holding that the mayor's affidavit sufficiently established that the city did not have coverage for the property owners' claims. We concluded that the property owners failed to meet proof with proof and that the city was entitled to statutory immunity because it had proved that it did not have insurance to cover the tort claim. Id. at 10, 425 S.W.3d at 717.
In the present case, the City attached two affidavits in support of its motion for summary judgment. First, in his affidavit, Moore stated,
3. As City Manager, I would have been familiar with any policy of general liability insurance coverage held by the City of Little Rock before, during and after January 14, 2013. The City of Little Rock did not have general liability insurance on January 14, 2013, the date of the accident giving rise to this cause of action.
4. After a search of all insurance records and insurance documents issued on behalf of the City of Little Rock, I hereby state that the City of Little Rock did *399 not have, carry or provide any policy of general liability insurance on January 14, 2013.
The City also attached the affidavit of Witherell, who stated,
2. As Human Resources Director, I have custody and control over all insurance records for the City of Little Rock, including files which contain any record of general liability insurance issued to the City of Little Rock as the policy holder.
3. After a search of all insurance records and insurance documents issued on behalf of the City on or before January 14, 2013, I do hereby certify that the City of Little Rock did not have, carry or provide any policy of general liability insurance on January 14, 2013, the date of the accident leading to the cause of action in this matter.
These two affidavits, like the mayor's affidavit in City of Malvern , 2013 Ark. 24, 425 S.W.3d 711, sufficiently establish that the City did not possess general-liability insurance at the time of the accident to cover Yang's claims. Moreover, Yang did not meet proof with proof to demonstrate the existence of a genuine issue of material fact on this issue. Therefore, because the City put forth proof that it did not have insurance coverage for the negligence claims alleged by Yang, we hold that the City is entitled to municipal immunity under section 21-9-301, and we affirm the circuit court's grant of summary judgment.
III. Civil-Rights Claims
For his second point on appeal, Yang argues that the circuit court erred in granting summary judgment on his section 1983 claims. Specifically, Yang contends that the City violated his son's civil rights because (1) the City failed to provide competent emergency services, thereby depriving his son of his life and liberty interests; (2) the City's water rescue operations policy prevented rescue attempts by anyone other than a designated water rescue unit, and that policy deprived his son of his life and liberty interests; (3) his son had a substantive property right to rescue services, and as a result, he was deprived of due process; and (4) his son's estate has a procedural due-process right to a "post-taking process of some kind."
Section 1983 provides a cause of action for individuals who have sustained a deprivation of rights secured by the United States Constitution or by federal law. 42 U.S.C. § 1983. To establish a violation of section 1983, Yang must show that the deprivation (1) was a right secured by the United States Constitution and the laws of the United States and (2) was caused by the City's acting under the color of state law. Early v. Crockett , 2014 Ark. 278, 436 S.W.3d 141. State employees have qualified immunity from suit under section 1983 similar to the immunity that applies to them under Arkansas law. Id. , 436 S.W.3d 141. Courts evaluating a claim of immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and, if so, whether that right was clearly established at the time of the alleged violation. Id. , 436 S.W.3d 141.
A. No Right to Rescue
We first address Yang's contentions that the City (1) failed to provide competent emergency services, (2) violated his son's substantive due-process rights because he had a property right in those services, and (3) violated his son's procedural due-process rights.
The Supreme Court of the United States has held that individuals do not have a constitutional right to governmental aid.
*400 DeShaney v. Winnebago Cnty. Dep't of Soc. Servs. , 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). The Court stated that "[its] cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." Id. at 196, 109 S.Ct. 998. The Court further stated that "the Due Process Clause of the Fourteenth Amendment ... does not transform every tort committed by a state actor into a constitutional violation." Id. at 202, 109 S.Ct. 998. "Government generally has no constitutional duty to provide rescue services to its citizens, and if it does provide such services, it has no constitutional duty to provide competent services to people not in its custody." Salazar v. City of Chicago , 940 F.2d 233, 237 (7th Cir. 1991) ; see also DeShaney , 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 ; Archie v. City of Racine , 847 F.2d 1211, 1220-23 (7th Cir. 1988).
Given this precedent, we conclude that, as a matter of law, the City had no constitutional duty to provide rescue services for Yang's son. Nor does the record reflect that the City acted under color of state law during its rescue efforts. Furthermore, Yang failed to attach any affidavits or supporting documentation to his response to the City's motion for summary judgment. He merely asserted in a footnote that the City's motion for summary judgment did not seek dismissal of his claims against the City under 42 U.S.C. section 1983 and that he "will not address how the execution of the City's policies and customs proximately caused a deprivation of Le Yang's constitutional right to life, liberty, and property." More significant, in his motion requesting modification of the circuit court's order, Yang failed to present any constitutional arguments on his civil-rights claims. Thus, Yang did not meet proof with proof on his civil-rights claims. We conclude that Yang's contentions lack merit because no constitutional violation had occurred at the time of the City's rescue efforts.
B. State-Created-Danger Exception
Next, Yang contends that the circuit court erred in granting summary judgment because his section 1983 claims fall under the state-created-danger exception. He asserts that the City's water-rescue-operations policy prevented any rescue attempts by others and that this policy deprived his son of his life and liberty interests.
There are two exceptions to the general rule that the government has no constitutional duty to render aid: (1) the special-relationship exception and (2) the state-created-danger exception. Johnson v. City of Seattle , 474 F.3d 634, 639 (9th Cir. 2007). Under the state-created-danger exception, there is a duty to protect when the state official affirmatively places an "individual in a position of danger that [the person] would not otherwise have faced." Repking , 2010 Ark. 356, at 9, 377 S.W.3d at 218.
In Ross v. United States , 910 F.2d 1422 (7th Cir. 1990), a mother brought an action against the city and others after her son fell into Lake Michigan at the tip of the breakwater. Emergency personnel arrived at the scene. One of the deputies ordered civilian scuba divers to cease their rescue efforts. Thirty minutes later, the authorized divers retrieved the boy's body, and he was pronounced dead the following morning. His mother filed suit. The district court entered summary judgment in favor of the deputy. The Seventh Circuit stated,
Absent a constitutional duty to provide these rescue services, ... the city cannot be held liable. On this point, we need do no more than cite the line of precedent from the Supreme Court and this court, holding that the government's failure to provide essential services does not violate the Constitution. See *401 DeShaney v. Winnebago County Dep't of Social Servs. , 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ; Doe v. Milwaukee County , 903 F.2d 499, 502 (7th Cir. 1990) ; Archie v. City of Racine , 847 F.2d 1211, 1220-23 (7th Cir. 1988) (en banc), cert. denied, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). The plaintiff's allegations of municipal policy cannot surmount the main obstacle to her claim: the city simply had no constitutional obligation to save William's life.
Id. at 1428. In Ross , the court held that the county's policy-not the city's-"of arbitrarily cutting off private sources of rescue without providing a meaningful alternative ... led to the deprivation of William's constitutionally protected right to life, [and Ross's] claim is cognizable under section 1983." Id. at 1431.
Ross is distinguishable from the present case because Yang did not present any evidence that a rescue attempt by any person, whether official or civilian, was arbitrarily prohibited by the City. Here, unlike the circumstances in Ross , there were no reasonable alternative avenues of rescue, and the City did not arbitrarily cut off any private source of rescue. By failing to offer proof with proof, Yang did not demonstrate the existence of a material issue of fact that the City, during its rescue efforts, affirmatively placed Yang's son in a position of danger that he "would not otherwise have faced." Repking , 2010 Ark. 356, at 9, 377 S.W.3d at 218. Because the state-created-danger exception does not apply, we hold that, as a matter of law, the circuit court did not err in granting summary judgment on Yang's civil-rights claims brought under 42 U.S.C. section 1983. Accordingly, we affirm.
Affirmed.

Additionally, the circuit court dismissed MEMS with prejudice, entered a default judgment against Middleton, and, after a bench trial, awarded Yang a judgment against Middleton for $ 17,627,638.04.