Cite as 2026 Ark. App. 233

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CV-24-742

|  |  |
|---|---|
| LAZAR STYLES AND CHRISTINE STYLES<br><br>APPELLANTS<br><br>V.<br><br>DALLAS COUNTY, ARKANSAS; ARKANSAS PUBLIC ENTITIES RISK MANAGEMENT ASSOCIATION; STEVEN BEAVER; AND CHRIS SANDERS<br><br>APPELLEES | Opinion Delivered April 15, 2026<br><br>APPEAL FROM THE DALLAS COUNTY CIRCUIT COURT [NO. 20CV-19-22]<br><br>HONORABLE SPENCER H. SINGLETON, JUDGE<br><br>AFFIRMED |

**CASEY R. TUCKER, Judge**

Lazar Styles and Christine Styles[1] ("Styles") appeal the Dallas County Circuit Court's grant of summary judgment to appellees, Dallas County, Arkansas; Arkansas Public Entities Risk Management Association ("APERMA"); Steven Beaver; and Chris Sanders (collectively, "Dallas County"). On appeal, Styles argues the circuit court erred in granting Dallas County's motion for summary judgment and erred in denying his cross-motion for summary judgment. We affirm.

I. *Procedural History and Facts*

---

[1]Christine Styles originally claimed loss of consortium, but that claim is not an issue on appeal.

On March 27, 2017, Styles chose to engage in community-service work to pay off his court-ordered fees. He was assigned to work with the Dallas County landfill as a "trash thrower" on a garbage truck owned by Dallas County and operated by its employees, Steven Beaver and Chris Sanders. During the performance of his community service, while riding on a sidestep of the garbage truck, Styles's left arm was crushed in the garbage truck's compacting machine, resulting in a degloving injury.

On April 22, 2019, Styles filed a complaint in the Dallas County Circuit Court against Dallas County, Arkansas; APERMA; and John Does 1–6. Styles alleged the Dallas County employees' negligence led to Styles's injury. APERMA was named as a party since it was "the insurer for negligence by Dallas County" and given that "counties are 'immune from liability and from suit for damages except to the extent that they may be covered by liability insurance.'" In his original complaint, Styles sought compensatory damages and injunctive relief. Dallas County and APERMA filed an answer denying the allegations in the complaint and asserting affirmative defenses of tort immunity pursuant to Arkansas Code Annotated section 21-9-301 (Repl. 2022) and comparative fault.

On October 1, 2019, Dallas County and APERMA moved for summary judgment, alleging that as a public entity, Dallas County and its employees were entitled to sovereign immunity. While Dallas County had an agreement with APERMA for limited coverage of bodily injury, APERMA's policy specifically excluded claims barred by sovereign or tort immunity. Dallas County argued that "the Arkansas direct-action statute does not apply as a

bar to sovereign immunity extended by Ark. Code Ann. § 21-9-301" and that summary judgment was thus proper.

Styles filed an amended complaint adding Steven Beaver, in his capacity as an employee of Dallas County, and alleging Beaver negligently drove and operated the garbage truck, thereby causing the degloving of Styles's hand. Specifically, Styles alleged Beaver activated the compacting mechanism while Styles's arm was inside the garbage compactor.

On March 16, 2020, Styles filed a second amended complaint adding Chris Sanders as a defendant. Styles alleged that Sanders, as his supervisor, failed to train him regarding the proper safety procedures for working on a garbage truck and failed to exercise ordinary care by assigning him to ride on the outside of the garbage truck near the compacting mechanism even knowing he had physical limitations. In addition, Styles added a federal civil rights claim against Dallas County through Beaver and Sanders alleging that he was placed at a significant risk of serious, immediate, and proximate harm, which was known to Dallas County because it was mandated to follow federal safety guidelines for the safe operation of garbage trucks pursuant to 40 CFR 243.202. Further, Styles alleged that Sanders acted recklessly in conscious disregard of the risk and in the performance of his supervisory duties over Styles, and Beaver violated his constitutional rights by activating the mechanism without ensuring he was clear from the compactor's reach. Styles alleged that the lack of training he received from Dallas County with respect to his assigned community service duty on the garbage truck exposed him to a state-created danger in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

3

On August 26, 2021, Styles, Beaver, and Sanders were deposed. During Styles's deposition, he testified that Sanders told him to stay on the back of the truck after picking up trash rather than getting back inside the vehicle after each stop. Sanders denied any knowledge of federal or state regulations in the safe use and operation of the truck. He stated that he trained Styles on everything he needed to know about picking up trash. When it was full, Sanders would tell Beaver to pack it. Sanders said, "I don't see no other training that it should have been. . . . I showed him. I didn't tell him nothing. It was proof in the pudding. I showed him everything to do." Beaver testified that he heard Styles yell "get it off me," which was his first indication that the compactor had injured Styles.

On November 16, 2023, Styles moved for summary judgment, alleging that Dallas County placed Styles on a garbage truck with no prior safety training or experience and violated his civil rights under 42 U.S.C. § 1983 by placing Styles in a state-created danger that resulted in his injury. Further, Styles asserted that APERMA was responsible for indemnifying Dallas County's civil rights violations. Attached to Styles's motion was a report from his expert, mechanical engineer Cameron Orr, an employee of Alpine Engineering & Design, Inc., who inspected the garbage truck involved in the incident and stated:

> It is my opinion that Dallas Co. willfully disregarded the safety of their employees and others working near the incident refuse truck by 1) circumventing or disabling a safety interlock that prevents the packer from moving when the hopper access door is open, 2) installing an unauthorized riding step on the refuse truck that encouraged personnel to be in close proximity to the open access door and packer while the packer is in operation, and 3) modifying and using a refuse truck in violation of several sections of the ANSI Z245.1 standard.

4

With respect to Beaver and Sanders, he expressed the following opinions:

> It is my opinion that Mr. Sanders failed to properly train Mr. Styles in the safe use of the refuse truck. In particular, he failed to warn Mr. Styles of the hazards of being in close proximity to the packer while it is in operation.
>
> . . . .
>
> It is my opinion that Mr. Beaver failed to operate the incident refuse truck safely by failing to ensure the area around the hopper and packer was clear of all personnel before operating the packer.

The circuit court held a hearing on the cross-motions for summary judgment. At that hearing, Styles's counsel conceded that he was dropping the negligence counts against Dallas County, Arkansas, and Beaver and Sanders due to sovereign immunity. The circuit court announced it would take the only remaining count—the 42 U.S.C. § 1983 claim—under advisement.

On May 14, 2024, the circuit court, by written order, granted Dallas County's summary-judgment motion effectively denying Styles's motion for summary judgment. Specifically, the court considered the facts in the light most favorable to Styles and found that Styles was given an opportunity to pay his outstanding fines and fees owed to Dallas County or perform community service, and Styles chose community service. Further, the court found:

> Styles was assigned to be a "trash thrower" on a garbage collection truck. The garbage collection crew comprised two Dallas County employees - Steven Beaver and Chris Sanders. Styles watched the two employees collect garbage from a couple of stops from the passenger seat in the truck, then he was assigned by Beaver, the driver, to take a position on a step at the side of the garbage truck. Beaver and Sanders did not otherwise train Styles.

5

The court's findings also included that the garbage truck was modified to have a sidestep that was not part of the original design, and it had a malfunctioning proximity switch that allowed the truck to operate the compacting function—the packer—when the access door was open. Styles was not told where to place his hands and "was allowed to travel on the step." Beaver and Sanders did not properly train or warn Styles of the defects in the truck. Beaver activated the packer without confirming Styles was clear of the compacting function.

From its findings, the court held that (1) Styles failed to specify what federal constitutional or statutory right Dallas County was alleged to have violated; and (2) the claims in the action—failure to train, unsafe vehicle, failure to warn—are negligence claims and not appropriate for relief under § 1983.

II. *Analysis*

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, responses to requests for admission, and affidavits show that there is no genuine issue of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Hanners v. Giant Oil Co. of Ark., Inc.*, 373 Ark. 418, 422, 284 S.W.3d 468, 472 (2008). Normally, this court determines if summary judgment is proper by deciding whether evidentiary items presented by the moving party leave a material fact unanswered, while viewing all evidence in favor of the nonmoving party. *Selrahc Ltd. P'ship v. SEECO, Inc.*, 2009 Ark. App. 865, 374 S.W.3d 33. However, when parties file cross-motions for summary judgment, as in this case, they essentially agree that there are no issues of material fact remaining, and summary judgment is an appropriate means of resolving the case. *Washington*

6

*Cnty. v. Bd. of Trs. of the Univ. of Ark.*, 2016 Ark. 34, at 3, 480 S.W.3d 173, 175. The appellate court reviews issues of statutory interpretation and questions of law de novo. *Brown v. Kelton*, 2011 Ark. 93, 380 S.W.3d 36.

"To establish a violation of section 1983, the plaintiff must show the deprivation (1) was a right secured by the United States Constitution and laws of the United States, and (2) was caused by a person or persons acting under the color of state law." *Repking v. Lokey*, 2010 Ark. 356, at 5, 377 S.W.3d 211, 216–17. The Due Process Clause of the Fourteenth Amendment "is phrased as a limitation on a state's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). However, the exception applicable here under the Due Process Clause provides that a citizen has an affirmative right to safety when the state has created a danger, and thus, the state has a duty to protect when the state officers affirmatively place a particular individual in a position of danger that he or she would not have otherwise faced. *Repking, supra*. For such a duty to arise, the actions of the state must create a unique risk of harm to that person that is greater than the risk faced by the general public. *Id.*

In *Repking*, the Arkansas Supreme Court adopted the five-part test set forth in *Hart v. City of Little Rock*, 432 F.3d 801 (8th Cir. 2005) for analyzing the state-created-danger exception. Under *Hart*, a plaintiff must show (1) membership in a limited, precisely definable group; (2) that the conduct of the state or local officials put the plaintiff at significant risk of serious, immediate, and proximate harm; (3) that the risk was obvious or known to the state

or local officials; (4) that the officials acted recklessly in conscious disregard of the risk; and (5) in total, the conduct shocks the conscience. *Id.* at 805.

Mere negligence can never be conscience shocking and cannot support a claim alleging a violation of substantive due-process rights. *Terry B. v. Gilkey*, 229 F.3d 680, 684 (8th Cir. 2000). Gross negligence "is not actionable . . . under § 1983." *S.S. v. McMullen*, 225 F.3d 960, 964 (8th Cir. 2000) (quoting *Sellers ex rel. Sellers v. Baer*, 28 F.3d 895, 902–03 (8th Cir. 1994)). "Proof of intent to harm is usually required, but in some cases, proof of deliberate indifference, an intermediate level of culpability, will satisfy this substantive due process threshold." *Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir. 2005) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848-49). For deliberate indifference to be found, the official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, but he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1984).

To reverse summary judgment, we must find there was evidence that Dallas County acted intentionally or wrongfully in disregarding a known danger. *Avalos v. City of Glenwood*, 382 F.3d 792, 798 (8th Cir. 2004). There is no dispute that Dallas County did not intend to harm Styles––the issue is whether Dallas County's actions or inactions amounted to deliberate indifference. *See Terrell*, *supra.*

In the case before us, Styles did not prove a prima facie § 1983 case. The only testimony in the record came from Beaver, Sanders, and Styles. There is simply no evidence in the record that Beaver or Sanders anticipated or knew that this type of incident and

8

resulting injury could happen. Styles failed to present any evidence that Beaver and Sanders were aware of any safety standards regarding the operation of the truck. Sanders testified as follows:

Q: And so tell me this: Do you know about any federal or state safety regulations in the safe use and operation of that truck?

A: No, I do not know nothing about none of that.

Q: And so is it true to say that you could only train Mr. Styles about the things you know about, right?

A: Right. Pick up a bag of trash, throw it in the hole.

There was no conscious disregard of any risk because they did not perceive the risk. In fact, Beaver testified in his deposition that Styles had the same training as countless other people—maybe twenty—without being injured.

When questioned by the court whether Beaver or Sanders knew the truck had a proximity switch, Styles's counsel admitted he had no proof that they knew the truck came with a proximity switch. It goes without saying that, if they were unaware of the existence of the proximity switch, they could not know it was malfunctioning. Styles failed to state a case that violations of safety regulations were within the purview of Beaver, Sanders, or any other party acting on behalf of Dallas County.

While Styles offered an expert report regarding safety violations, he admitted that none of the alleged CFR safety violations created an enforceable right that could be remedied in a § 1983 action. Styles provided no proof as to who modified the truck or whether Beaver and Sanders knew the truck had been modified. When questioned by the court whether

9

Dallas County was responsible for putting the step on the truck and whether there was any evidence of that, Styles's counsel admitted: "As I am standing here right now I do not, but it would be conjecture either way."

This was, at most, gross negligence. Pursuant to the previously discussed precedent—which we are bound to follow—even gross negligence does not satisfy the *Hart* test for a state-created danger. We fail to see a genuine issue of material fact that Dallas County acted recklessly and in conscious disregard of the risks so as to shock our conscience.

Affirmed.

BARRETT and MURPHY, JJ., agree.

*Collins, Collins & Ray, P.A.*, by: *Matthew G. French* and *Brian W. Ray*, for appellants.

*C. Burt Newell*, for appellees.