Cite as 2020 Ark. 388

# SUPREME COURT OF ARKANSAS
**No.** CV–19–962

| | |
|---|---|
| BEAR CHANEY, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE ARKANSAS ASSESSMENT COORDINATION DIVISION OF THE STATE OF ARKANSAS<br><br>APPELLANT<br><br>V.<br><br>UNION PRODUCING, LLC; J. DAVID REYNOLDS COMPANY; J. DAVID REYNOLDS III; PANTHER CREEK PROPERTIES, LLC; E&L OIL, LLC; JERRY LANGLEY OIL COMPANY, LLC; JAMES LANGLEY OPERATING COMPANY, INC.; JAMES WALLACE LANGLEY; BERG LANEY & BROWN COMPANY; BERG ROYALTY COMPANY; ARKANSAS PRODUCTION SERVICES, LLC; SMACKOVER RESOURCES, INC.; TOC, LLC; AND DAN REYNOLDS COMPANY<br><br>APPELLEES | **Opinion Delivered:** December 3, 2020<br><br>APPEAL FROM THE OUACHITA COUNTY CIRCUIT COURT [NO. 52CV-17-39]<br><br>HONORABLE DAVID F. GUTHRIE, JUDGE<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>REVERSED AND REMANDED IN PART; DISMISSED IN PART. |

**JOHN DAN KEMP, Chief Justice**

Appellant Bear Chaney, in his official capacity as Director of the Arkansas Assessment

Coordination Division ("AACD") of the State of Arkansas, filed an interlocutory appeal

from the Ouachita County Circuit Court's order denying his motion for summary

judgment. For reversal, Chaney argues that the circuit court erred as a matter of law in

finding that he was not entitled to sovereign immunity and that the circuit court lacked

subject-matter jurisdiction to award injunctive relief against him. We reverse and remand in part and dismiss in part.

## I. *Facts*

Appellees, the plaintiffs in the underlying case, include Union Producing, LLC; J. David Reynolds Company; J. David Reynolds III; Panther Creek Properties, LLC; E&L Oil, LLC; Jerry Langley Oil Company, LLC; James Langley Operating Company, Inc.; James Wallace Langley; Berg Laney & Brown Company; Berg Royalty Company; Arkansas Production Services, LLC; Smackover Resources, Inc.; TOC, LLC; and Dan Reynolds Company. They own certain interests in mineral properties ("working interests") located in Ouachita County.

Chaney is the director of the AACD, which is responsible for the statewide supervision and coordination of the assessment of real property made by county tax assessors for ad valorem tax purposes.[1] Each year, the AACD issues its "Guidelines for Mass Appraisals of Minerals" ("AACD Guidelines") to the county tax assessors in Arkansas's seventy-five counties. According to the AACD Guidelines, its "[v]alues . . . should be used by all counties and applied to all producing mineral interests in the county each year."

Debbie Lambert, Tax Assessor of Ouachita County ("Assessor"), assesses the value of real property, including appellees' working interests, and bases her assessments on the AACD Guidelines. Those assessments are based on a yearly price per barrel of oil

---

[1]The AACD is not a party on appeal. While Chaney has argued on AACD's behalf at the circuit court level and on appeal, we see no evidence in the record that the AACD has filed an appeal in this matter.

("$Factor"), which the AACD calculates, and the Assessor applies the $Factor in certain mathematical formulas to calculate the assessed values of appellees' working interests.

For tax years 2016, 2017, and 2018, appellees disputed the assessed values of their working interests as determined by the Assessor. Each year, appellees appealed their working-interest values to the Ouachita County Board of Equalization, which denied their claims. Appellees appealed the Board's rulings to the Ouachita County Court, which also denied their claims. Appellees then appealed the county court's rulings to the Ouachita County Circuit Court.

On February 23, 2017, when appellees first appealed to the Ouachita County Circuit Court, they added claims for injunctive relief against Chaney in his official capacity as the director of the AACD. They sought to appeal the county court's order and requested for relief that the 2016 assessed values of the appellees' working interests calculated by the Assessor be "stricken, set aside, and declared void as being erroneous, excessive, arbitrary, and not representative of the true market value of the working interests." They alleged that the AACD should be enjoined from (1) mandating the tax assessors of the state to use the AACD computer program and the $Factor in valuing mineral property beginning in 2016; (2) using the three-year rolling average of oil prices as the current market value of oil properties in the assessment of the working interests; and (3) using or mandating the use of its computer program and mathematical formula in the valuation of mineral property. They also sought injunctive relief from the Assessor and claimed that the Assessor failed to reduce the value of the working interests derived from the AACD formula to a 20 percent value. They further requested that the AACD be enjoined from defining "newly discovered

3

property" to include an increase in the barrels of production of an existing oil well or oil lease, pursuant to amendment 79 to the Arkansas Constitution. Appellees made similar claims relating to their 2017 and 2018 assessments in subsequent appeals to the circuit court.

On May 1, 2017, Chaney responded separately to appellees' appeal and petition and stated that the "AACD's Guidelines are not mandatory, and county assessors are under no legal duty to follow them." He asserted that appellees' claims against the AACD were barred by the doctrine of sovereign immunity pursuant to article 5, section 20 of the Arkansas Constitution.

Chaney also moved for summary judgment on December 3, 2018, and argued, *inter alia*, that the claims against him were barred because, as Director of the AACD, he had no authority to direct how the county assesses the taxes pursuant to Arkansas Code Annotated section 26-26-1101 (Repl. 2020). On January 18, 2019, the circuit court held a hearing on Chaney's motion for summary judgment at which time it took the matter under advisement. During the course of the litigation, Chaney also filed motions to dismiss on sovereign-immunity grounds, asserting that he was not a proper party to the lawsuit because he had no legal authority to mandate how taxes are assessed at the county level.

The circuit court entered an order consolidating the three separate tax appeals for the tax years 2016, 2017, and 2018. Specifically, on the issue of Chaney's sovereign-immunity defense, the circuit court entered an order ruling that

> [a]n issue of material fact exists as to whether or not the guidelines provided by [Chaney] to the county assessor for the assessment of the value of mineral interests are discretionary or directory. The existence of this fact question in turn creates a fact issue as to whether or not an exception exists to the sovereign immunity claim of [Chaney]. These issues dictate that the motion for Summary Judgment should be denied.

4

Chaney timely filed this interlocutory appeal.

## II. *Sovereign Immunity*

On appeal, Chaney argues that the circuit court erred in denying summary judgment on the issue of his entitlement to sovereign immunity. He contends that appellees' efforts to enjoin the AACD's lawful issuance of guidelines to assist local tax assessors in assessing minerals are barred by sovereign immunity. Chaney also claims that the circuit court erred in finding that a genuine issue of material fact exists concerning whether the AACD Guidelines are discretionary or directory.

An order denying a motion to dismiss or for summary judgment based on the defense of sovereign immunity or the immunity of a government official is an appealable order. *See* Ark. R. App. P.–Civ. 2(a)(10); *City of Little Rock v. Dayong Yang*, 2017 Ark. 18, at 4, 509 S.W.3d 632, 634. When the refusal to grant a summary-judgment motion has the effect of determining that the appellant is not entitled to immunity from suit, an interlocutory appeal is permitted because the right of immunity from suit is effectively lost if a case goes to trial. *Id.*, 509 S.W.3d at 634–35. Whether a party is immune from suit is purely a question of law and is reviewed de novo on appeal. *Id.*, 509 S.W.3d at 635.

The law is well settled on our standard of review in granting summary judgment. *Muccio v. Hunt*, 2016 Ark. 178, at 4–5, 490 S.W.3d 310, 312. A circuit court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Id.* at 5, 490 S.W.3d at 312. The burden of proof shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment; the opposing party must

5

demonstrate the existence of a material issue of fact. *Id.*, 490 S.W.3d at 312. Whether a party is immune from suit in a summary-judgment procedure is purely a question of law. *Repking v. Lokey*, 2010 Ark. 356, at 5, 377 S.W.3d 211, 216.

The question in this interlocutory appeal is whether Chaney is immune from suit. The Arkansas Constitution expressly adopts the doctrine of sovereign immunity in article 5, section 20, which provides that "[t]he State of Arkansas shall never be made defendant in any of her courts." The sovereign-immunity doctrine bars suit if a judgment for the plaintiff will operate to control the action of the State or subject it to liability. *Bd. of Trs. of Univ. of Ark. v. Andrews*, 2018 Ark. 12, at 5, 535 S.W.3d 616, 619. We have extended the doctrine of sovereign immunity to include state agencies, and we have recognized that a suit against a public official in his or her official capacity is essentially a suit against that official's agency. *Ark. State Med. Bd. v. Byers*, 2017 Ark. 213, at 3, 521 S.W.3d 459, 462.

Sovereign immunity may be overcome when the State is the moving party seeking relief and when the state agency is acting illegally or if a state officer refuses to do a purely ministerial act required by statute. *Ark. Dep't of Human Servs. v. Harris*, 2020 Ark. 30, at 3, 592 S.W.3d 670, 673. We have held that a state agency or officer may be enjoined from acting arbitrarily, capriciously, in bad faith, or in a wantonly injurious manner. *Id.*, 592 S.W.3d at 673. We have also recognized that a state agency or officer may be enjoined from pending action that is ultra vires. *Id.*, 592 S.W.3d at 673.

With this precedent in mind, we turn to the present case. Appellees argue that a factual question exists because Chaney's conduct falls under a sovereign-immunity exception. They contend that he acted in an arbitrary, illegal, or ultra vires manner in

6

controlling the assessment of their working interests through his promulgation of the AACD Guidelines.

Appellees' position is misplaced. First, it is solely the county tax assessors who have the authority and duty to assess property, pursuant to Arkansas Code Annotated section 26-26-1101 (stating "[e]ach year the county assessor shall . . . appraise and assess all real property situated within the boundaries of the county"). Based on this statutory authority, the Assessor—not Chaney—is charged with the duty to appraise and assess appellees' working interests. Second, this court has stated that methods and criteria set forth in these assessment manuals are not mandatory; rather, they are guidance tools. *See, e.g.*, *Kitchens v. Ark. Appraisal Serv.*, 233 Ark. 384, 386, 344 S.W.2d 853, 854. As such, the AACD Guidelines provide guidance for county tax assessors in calculating their yearly assessments. Because these AACD Guidelines are discretionary, Chaney did not engage in illegal, unconstitutional, or ultra vires conduct. He merely acted within his authority as the Director in issuing the AACD Guidelines to the Assessor and other county tax assessors across this state. Thus, based on our standard of review, we hold that the circuit court erred as a matter of law in finding that Chaney is not immune from suit. Accordingly, we reverse the circuit court's denial of Chaney's motion for summary judgment on sovereign-immunity grounds and remand for entry of an order consistent with this opinion.

### III. *Jurisdiction*

Next, Chaney contends that the circuit court lacked subject-matter jurisdiction to award injunctive relief against him. He asserts that seeking injunctive relief against the AACD is not available in a tax-assessment-appeal proceeding.

7

We have stated that we lack appellate jurisdiction to hear on interlocutory appeal any issue other than whether the circuit court erred in denying summary judgment on the issue of sovereign immunity. *See City of Malvern v. Jenkins*, 2013 Ark. 24, at 6, 425 S.W.3d 711, 715. *See also Williams v. McCoy*, 2018 Ark. 17, at 6, 535 S.W.3d 266, 269 (dismissing Williams's appeal on a Freedom of Information Act claim because it was an improper interlocutory appeal). Because Chaney's remaining argument is outside the scope of this interlocutory appeal, we dismiss it for lack of appellate jurisdiction.

Reversed and remanded in part; dismissed in part.

BAKER, J., concurs without opinion.

HART and WYNNE, JJ., dissent.

**JOSEPHINE LINKER HART, Justice, dissenting.** I dissent. The circuit court was correct to deny the State's assertion of sovereign immunity in the case at bar.

I. *Legal Background*

This is a case about tax assessments of working interests in oil and gas properties located within Ouachita County, Arkansas. The Arkansas Constitution provides that "(a)ll real and tangible personal property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct[.]" Ark. Const. art. 16, § 5. State law then provides that mineral interests are to be "reappraised *annually* for ad valorem tax purposes." Ark. Code Ann. § 26-26-1308(a)(2) (emphasis added).

The Arkansas Constitution also provides that

[w]henever a countywide reappraisal or reassessment of property subject to ad valorem taxes made in accordance with procedures established by the General

8

Assembly shall result in an increase in the aggregate value of taxable real and personal property in any taxing unit in this State of *ten percent (10%) or more over the previous year* the rate of city or town, county, school district, and community college district taxes levied against the taxable real and personal property of each such taxing unit shall, upon completion of such reappraisal or reassessment, be adjusted or *rolled back, by the governing body of the taxing unit*, for the year for which levied[.]

Ark. Const. art. 16, § 14 (emphases added). State law provides that "[t]he *county assessor* shall assess all producing mineral interests in the county." Ark. Code Ann. § 26-26-1110(a)(1) (emphasis added). In this case, the county assessor would be the "taxing unit" for purposes of art. 16, § 14. State law also requires county assessors to follow rules and procedures prescribed by the Arkansas Assessment Coordination Division (AACD). Ark. Code Ann. § 26-26-1905. The same statutory chapter provides that AACD shall annually develop and publish valuation tables and other data that shall be used by county assessors for assessing qualifying lands. Ark. Code Ann. § 26-26-407(f)(1). In this case, AACD would be the "governing body of the taxing unit" for purposes of art. 16, § 14.

## II. *Procedural History*

Plaintiffs–Appellees filed a lawsuit claiming AACD was involved in a scheme to overtax the owners of working mineral interests in Ouachita County in violation of Arkansas law and the Arkansas Constitution. Several allegations together form the basis of Plaintiffs'-Appellees' claim.

The complaint alleged that AACD issues to county assessors a computer program to be used when valuing a barrel of oil in the ground, which is then used to establish the market value of each working interest. Specifically, the complaint identified two separate problems with AACD's computer program. First, AACD made modifications to the computer

9

program in 1998 and 2000 resulting in artificially increased per-barrel valuations for low-level production ("0-2 bbls of oil"), which thereby results in overstated valuations of the corresponding working interests. Second, AACD's computer program uses the average market price of oil in Arkansas in each of the previous three years (a "three-year rolling average") to determine the current market price of oil for purposes of valuing the working interests, when Ark. Code Ann. § 26-26-1308(a)(2) dictates that those interests be reassessed annually. For example, as of January 1, 2016, the three-year rolling average for the price of oil in Arkansas was $70.70 per barrel, when the true market price for oil as of that date was $39 per barrel.

Additionally, Plaintiffs'-Appellees' lawsuit identified a third problem, not with AACD's computer program, but with the "Guidelines for Mass Appraisals of Minerals, Revised 2016" (the "2016 Guidelines"), which AACD issues to county assessors. Specifically, the 2016 Guidelines identify the term "Newly Discovered Property," defining it as "production over the ADP [average daily production] for the previous year." Plaintiffs-Appellees alleged that this definition for Newly Discovered Property is an unconstitutional attempt by AACD to circumvent the 10 percent limit on year-to-year property tax increases found in art. 16, § 14 of the Arkansas Constitution.

Bear Chaney, director of AACD, filed a motion to dismiss and a motion for summary judgment, arguing that sovereign immunity barred Plaintiffs'-Appellees' claims. Chaney claimed that county assessors are not legally required to follow AACD valuation guidelines or to use its computer program. Because neither directive is mandatory, Chaney argued, the

10

exception to sovereign immunity for illegal, unconstitutional, or ultra vires State conduct was inapplicable.

But despite Chaney's representations to the contrary, Plaintiffs-Appellees produced substantial evidence that AACD, under Chaney's direction, effectively forces county assessors to comply with the valuation formulas and guidelines from AACD. During her deposition, Debbie Lambert, the duly elected county assessor for Ouachita County, testified that she was told during her training with AACD that she had no choice—she had to use the AACD guidelines in valuing property. Lambert said she was told funds would be withheld if she did not comply with the guidelines. She also described an occasion where an AACD representative came to her office, determined that the wrong table had been plugged into the computer, told her to change it to the AACD formula, and then directed her not to tell anyone he had been there. This was consistent with the testimony of Jennifer Chambers, the employee responsible for generating mineral values in Ouachita County— Chambers always did what AACD told her (lest AACD "come and write us up"), and AACD has never told her that she could use a different formula for valuing the oil and gas properties. Similarly, Margaret Pace, another employee in the Ouachita County Assessor's Office, explained that the county assessor has no means to determine the value of the working interests in oil properties other than what is provided by AACD:

> Jennifer is the person who is primarily responsible for entering the data and coming up with the value of the oil properties. She gets her numbers from the [AACD] manual or guidelines. She enters those into the computer and miraculously a value comes up. It is fair to say that except for the guidelines, we don't know what the value of the minerals are. We have no way to prove the market value.
> … .

11

I know that [AACD] has a huge spreadsheet that they get their information from. That's all I know about it. As far as how they came up with these numbers, I don't know. Our job is to plug in the numbers, hit a button and that's how we come up with the assessed value.

Furthermore, Lindsey Nutt, who works for a company that contracts with various counties to provide real estate appraisals, testified that AACD can withhold funding from county assessors when they do not follow AACD guidelines for valuation of oil and gas minerals and that she was aware AACD has done so on at least two occasions. "The idle threat, so to speak, is real," she testified, adding that "[A]ACD is actually assessing or valuing the oil properties, not Ouachita County."

Based upon these factual circumstances, the circuit court concluded that Chaney's assertion of sovereign immunity did not bar Plaintiffs'-Appellees' claims at that stage of the lawsuit. The circuit court's order provided in relevant part as follows:

An issue of material fact exists as to whether or not the guidelines provided by Defendant to the county assessor for the assessment of the value of mineral interests are discretionary or directory. The existence of this fact question in turn creates a fact issue as to whether or not an exception exists to the sovereign immunity claim of the Defendant.

It is from this decision that Chaney appeals to this court, arguing that Plaintiffs'-Appellees' claims should be barred pursuant to sovereign immunity.

III. *Sovereign Immunity*

Article 5, § 20 of the Arkansas Constitution provides that "[t]he State of Arkansas shall never be made defendant in any of her courts." While I disagree with this court's definition, many opinions of this court assess article 5, § 20 in terms of "sovereign immunity." *See, e.g.*, *Mitchem v. Hobbs*, 2014 Ark. 233, at 3–4; *Ark. Dep't of Cmty. Corr. v. City of Pine Bluff*, 2013 Ark. 36, at 4, 425 S.W.3d 731, 734; *Bd. of Trs. of Univ. of Ark. v.*

*Burcham*, 2014 Ark. 61, at 3–4. Traditionally, there were three exceptions to the sovereign-immunity doctrine in Arkansas: (1) when the State is the moving party seeking specific relief, (2) when a plaintiff seeks to enjoin a state official from acting unlawfully, and (3) when an act of the legislature has created a waiver of immunity. *Id.*

Then, in January 2018, this court handed down its decision in *Board of Trustees of University of Arkansas v. Andrews*, 2018 Ark. 12, 535 S.W.3d 616. In *Andrews*, the majority held that the third of the three aforementioned sovereign-immunity exceptions (legislative waiver) violated art. 5, § 20 of the Arkansas Constitution:

> [W]e conclude that the legislative waiver of sovereign immunity ... is repugnant to article 5, section 20 of the Arkansas Constitution. In reaching this conclusion, we interpret the constitutional provision, "The State of Arkansas shall never be made a defendant in any of her courts," precisely as it reads.

*Andrews*, 2018 Ark. 12, at 10, 535 S.W.3d at 622. I have expressed my disagreement with the *Andrews* decision on numerous occasions. *See, e.g., Milligan v. Singer*, 2019 Ark. 177, at 8–9, 574 S.W.3d 653, 658–59 ("Effectively, a majority of this court held that the State of Arkansas does not have to pay its employees minimum wage, or at least that no court can make the State pay its employees their wages when it has declined to do so. As one circuit judge put it shortly thereafter, this was a 'sea change' that significantly abridged the then-acknowledged exceptions to sovereign immunity[.]").

Thankfully, later decisions of this court seemed to confirm that the second of the aforementioned exceptions to the sovereign immunity doctrine—the exception for bad-faith, unconstitutional, or ultra vires State conduct—remained intact. In *Monsanto Co. v. Arkansas State Plant Board*, this court held:

> [T]he sovereign immunity defense is not available against claims of ultra vires conduct that only seek declaratory or injunctive relief. … In short, the ultra vires exception is alive and well.

2019 Ark. 194, at 9, 576 S.W.3d 8, 13. At least nominally, then, Arkansas citizens still have the ability to go to court and put a stop to bad-faith, unconstitutional, or ultra vires State conduct.

But now, in this case and in another case handed down by our court today, *see Arkansas Development Finance Authority v. Wiley*, 2020 Ark. ___, ___ S.W.3d ___, I am noticing a troubling trend. In both cases, the plaintiffs sued a state agency and other parties, alleging the defendants harmed the plaintiffs by administering the state agency's program in a way that violated the plaintiffs' rights. In both cases, the state agency asserted that the plaintiffs' claims must be dismissed on the basis of sovereign immunity. In both cases, the plaintiffs argued that their claims were premised upon bad-faith, unconstitutional, or ultra vires State conduct, which supplies the exception to sovereign immunity. In both cases, after considering the factual allegations against the state agency, the circuit court denied the state agency's assertion of sovereign immunity and set the case for trial. In both cases, the state agency then filed an interlocutory appeal to this court. And in both cases, this court reverses the circuit court's denial of sovereign immunity and dismisses the state agency from the lawsuit. Most notably, in both cases, this court reaches its decision to reverse the circuit court by refusing to consider the same information the circuit court relied on in rejecting sovereign immunity.

In both cases, the majority emphasizes (wrongly, in this context) that "[w]hether a party is immune from suit is purely a question of law," while simultaneously ignoring the

plaintiffs' factual claims of ultra vires State action. In this case, the majority concludes that AACD is entitled to sovereign immunity, since state law provides that the county assessor, not AACD, is the one who actually conducts property assessments. *See* Ark. Code Ann. § 26-26-1101 (stating that "[e]ach year the county assessor shall . . . appraise and assess all real property situated within the boundaries of the county").[1] In doing so, the majority embraces Chaney's individual representation that county assessors are not actually required to use AACD's formulas and guidelines even though state law indicates otherwise. *See* Ark. Code Ann. § 26-26-407(f)(1) ("In devising and developing methods of assessing and levying the ad valorem property tax on real property, the Assessment Coordination Department shall annually develop and publish valuation tables and other data that *shall be used* by county assessors for assessing lands qualifying under this subchapter.") (emphasis added). But even if it were true that county assessors are not required by state law to use the formulas and guidelines provided by AACD, halting the sovereign-immunity analysis there ignores a fundamental reality: ultra vires State conduct can also occur through the way a State actor *exercises or administers* the authority he or she holds pursuant to state law. If state law itself does not require county assessors to use AACD's formulas and guidelines, but AACD effectively dictates the same through other means, and those formulas and guidelines result

---

[1]The majority cites *Kitchens v. Arkansas Appraisal Service*, 233 Ark. 384, 344 S.W.2d 853 (1961), for the proposition that assessment manuals from AACD are not mandatory, but this court stopped well short of issuing that holding. *See Kitchens*, 233 Ark. at 385–86, 344 S.W.2d at 853–54 ("It is claimed that the word 'shall' makes the language of § 5 mandatory. We find it unnecessary to pass upon this, although it is true that the word 'shall' is frequently used in statutes as a synonym of the word 'must'. Assuming that the language used is mandatory, we think that the appellees have complied with the language.") (citation omitted).

15

in illegally or unconstitutionally excessive taxation, it is still ultra vires State conduct. The entire point of Plaintiffs'-Appellees' lawsuit is "(one way or the other—we, the citizens, are being overtaxed)," but the majority's decision prevents them from proving their case and obtaining relief.

Once again, this court has elevated art. 5, § 20 ("[t]he State of Arkansas shall never be made defendant in any of her courts") above the rest of the Arkansas Constitution. They have done so by reading art. 5, § 20 in isolation, uninformed by the individual guarantees specified elsewhere in the Arkansas Constitution, despite our rules of constitutional interpretation that require us to interpret the constitution as a whole. *See, e.g.*, *Ward v. Priest*, 350 Ark. 345, 382, 86 S.W.3d 884, 898 (2002) ("It is a rule of universal application that the Constitution must be considered as a whole, and that, to get the meaning of any part of it, we must read it in the light of other provisions relating to the same subject."). Article 5, § 20, found in the legislative article of the Arkansas Constitution, is nothing more than a limitation on the *legislature*'s authority to pass certain laws. It in no way limits a *citizen*'s right to obtain relief from illegal or unconstitutional State conduct. Affording sovereign immunity to AACD and its director in this case renders meaningless art. 16, § 14 and its 10 percent limit on property tax increases, as well as the individual protections found in article 2 of the Arkansas Constitution. There must be an exception to sovereign immunity for illegal or unconstitutional State conduct, and there must be a way to prove such conduct when it occurs, lest we allow such violations to continue unmitigated and undeterred. Without such basic protections, we cannot expect democracy to long survive.

16

Instead of the majority's approach, we should simply consider the factual allegations presented by the plaintiffs against the state agency and then ask whether the facts "so construed" would establish bad-faith, unconstitutional, or ultra vires State conduct. *See John v. Faitak*, 2020 Ark. 105, at 4, 594 S.W.3d 871, 873 (reversing circuit court's award of summary judgment pursuant to defendant's assertion of quasi-judicial immunity where plaintiff alleged conspiracy which, if proved, would be outside the scope of court order from which defendant's assertion of immunity stemmed).[2] If the case proceeds to discovery, then the ultra vires question can still be assessed under the summary-judgment standard found at Ark. R. Civ. P. 56. That is exactly what happened in this case, and the circuit court correctly identified a factual dispute as to whether the AACD guidelines issued to county assessors are made "discretionary or directory." Hence, a trial is necessary. The majority reverses the circuit court by quoting an isolated statute for the unremarkable proposition that county tax assessors are tasked with assessing property values, and simply ignores the well-supported allegation that AACD effectively forces county assessors to use its illegal formulas and guidelines when assessing property values in their respective counties.

One thing I hope the bench and the bar will remember after I retire is this—the right to be free from unconstitutional or illegal government action means little if the facts

---

[2] *See also Kahle v. Leonard*, 477 F.3d 544, 549–50 (8th Cir. 2007) ("On this appeal from the order denying Malone's motion for summary judgment, we do not have jurisdiction to decide, for example, whether there is sufficient evidence for a jury to find that Kahle did not consent to the sexual contact with Leonard. But we do have jurisdiction to decide whether, assuming that all of the facts alleged by Kahle are true, Malone is entitled to qualified immunity as a matter of law.").

otherwise warranting vindication of that right can be procedurally buried or simply ignored. Due process requires more.

I would affirm.

**ROBIN F. WYNNE, Justice, dissenting.** Because the doctrine of sovereign immunity does not bar this suit against Bear Chaney in his official capacity as Director of the Arkansas Assessment Coordination Division of the State of Arkansas (AACD), I must respectfully dissent.

In their consolidated appeals to the circuit court, appellees alleged that the assessed values of their working interests in minerals calculated by the Assessor should be set aside because they did not represent the true market value of those interests. As to Chaney, appellees sought declaratory and injunctive relief related to the guidelines, computer program, and formula AACD provides to county assessors for determining the assessed value of working interests in oil and gas properties.

Regardless of whether the AACD guidelines at issue are discretionary or mandatory, Chaney is not entitled to sovereign immunity in this case. If the guidelines and formula at issue are contrary to the law (which has yet to be determined), there is no reason that AACD cannot be enjoined from issuing them. Such a suit falls squarely within the long-recognized category of permissible claims alleging ultra vires or illegal conduct and seeking only declaratory and injunctive relief. Sovereign immunity is therefore inapplicable. *See, e.g., Comm'n on Judicial Discipline & Disability v. Digby*, 303 Ark. 24, 792 S.W.2d 594 (1990); *Ark. State Claims Comm'n v. Duit Constr. Co.*, 2014 Ark. 432, 445 S.W.3d 496.

*Leslie Rutledge*, Att'y Gen., by: *William C. Bird*, Sr. Ass't Att'y Gen., for appellant.

*Harrell, Lindsey & Carr, P.A.*, by: *Paul E. Lindsey*, for appellees.