

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-13-1147

| | | | |
|---|---|---|---|
| | | **Opinion Delivered** May 7, 2014 | |
| CYNTHIA KING | | | |
| | APPELLANT | APPEAL FROM THE JOHNSON COUNTY CIRCUIT COURT [NO. JV-2012-66] | |
| V. | | | |
| | | HONORABLE KEN D. COKER, JR., JUDGE | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES | | | |
| | APPELLEE | AFFIRMED | |

## JOHN MAUZY PITTMAN, Judge

This is an appeal from an order terminating appellant's parental rights to infant B.R. and to school-age children C.K.1 and C.K.2. Appellant argues that the evidence at the termination hearing was insufficient to prove either that she was provided with meaningful reunification services or that the children would be harmed by remaining in her care. We affirm.

Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Jones-Lee v. Arkansas Department of Human Services*, 2009 Ark. App. 160, 316 S.W.3d 261. However, courts are not to enforce parental rights to the detriment or destruction of the health and well-being of a child. *Id.* An order terminating parental rights must be based on the court's finding by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically

SLIP OPINION

addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) and (ii) (Supp. 2013). The trial court must also find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark. Code Ann. § 9-27-341(b)(3)(B). Here, the statutory ground found by the trial court was that the children had continued out of appellant's custody for twelve months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions had not been remedied by appellant. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*).

On appeal, the issue is whether the trial court's finding that the fact was proved by clear and convincing evidence is clearly erroneous. *McDaniel v. Arkansas Department of Human Services*, 2013 Ark. App. 263. A finding is clearly erroneous when the appellate court is, on the entire evidence, left with a definite and firm conviction that a mistake has been made. *Id.* In deciding whether a finding of the trial court is clearly erroneous, we give great deference to the superior opportunity of the trial court to observe the parties and to judge the credibility of witnesses. *Id.*

A protective-services case was initially opened on C.K.1 and C.K.2 because appellant allowed them to have contact with a registered sex offender living next door and because of a pending investigation regarding allegations of physical abuse of a child by appellant. All three children were removed when infant B.R. was, at one week of age, diagnosed with failure to thrive due to neglect. The infant had lost 2.43 pounds in the week since his birth and was near death.

2

Appellant first argues that the Arkansas Department of Human Services (ADHS) failed to provide her with meaningful reunification services. We cannot address this argument because it was not raised below. *McHenry v. Arkansas Department of Human Services*, 2013 Ark. App. 711. To the contrary, at the termination hearing appellant's trial counsel not only failed to object to the adequacy of the reunification services provided but also elicited from appellant the statement that "[t]here aren't any other services that I feel like ADHS could have offered me that would have helped me." We cannot address this issue for the first time on appeal.

Appellant also argues that the evidence was insufficient to show that any potential harm could result from returning the children to her. We disagree. Removal of the children was due to neglect resulting in severe malnourishment to B.R. and, with respect to C.K.1 and C.K.2, failure to supervise so as to protect the children from potential danger. Appellant was provided with intensive and specialized training regarding the proper method for feeding B.R. The program provider for specialized family services testified that they provided appellant with a psychological evaluation, counseling, and one-on-one training for six months but that appellant failed to make any progress during these sessions. Although taught very specific skills, appellant demonstrated an inability to retain and implement her training during visitations with the children. The provider testified that appellant simply continued to make the same mistakes over and over despite the training. As an example, she related that appellant had been repeatedly shown how to hold the baby and the bottle during feeding so that the baby would get formula rather than air but that appellant was observed on several occasions during visitation to be unable to recognize that the baby was sucking in air and

SLIP OPINION

getting no formula for extended periods. Furthermore, when B.R. began eating whole foods, appellant would not break the food into appropriately sized pieces, but would instead give B.R. a whole cracker or a whole piece of cheese and simply tell him not to eat the whole thing. Because malnourishment was the reason for B.R.'s being taken into custody, appellant's inability to learn how to properly feed the baby was a matter of great concern, as was appellant's inability to recognize the choking hazard involved in giving large pieces of food to a one-year-old child.

There was additional testimony regarding appellant's inability to recognize hazards. During one visitation, B.R. was observed to fall twice and hit his head. Appellant did not attempt to catch the child before he fell, although his older brother did so, and appellant remained on the couch, making no attempt to soothe the child or check him for injury. When confronted about this behavior by the caseworker, who entered the room because the child was crying, appellant failed to recognize the significance of the incident. Furthermore, although appellant had been given instruction on safety concerns involved in having someone watch the children while she was away, appellant was unable to recite or retrieve what she had been taught in several sessions regarding safety concerns in selecting caretakers. The therapist stated that appellant showed no progress or improvement during the entire course of treatment and that appellant remained unable to properly feed B.R. or to recognize dangerous situations. Appellant's caseworker testified that appellant had failed to remedy her inability to properly feed B.R. and remained unable to recognize dangerous situations, and she saw no possibility that appellant could rectify these issues in the foreseeable future.

SLIP OPINION

Finally, the caseworker testified that the children were adoptable and that the older children had "blossomed" and gained self-esteem since being placed in foster care.

Although appellant received numerous services and completed the case plan, it appears from the record that she still had no stable transportation, housing, or employment and that, despite meaningful efforts to provide her with services, she did not achieve the ability to safely care for her children. Under these circumstances, we cannot say that the trial court erred in terminating appellant's parental rights. *Wright v. Arkansas Department of Human Services*, 83 Ark. App. 1, 115 S.W.3d 332 (2003).

Affirmed.

HARRISON and GRUBER, JJ., agree.

*Didi H. Sallings*, Arkansas Public Defender Commission, for appellant.

*Tabitha Baertels McNulty*, DHS Office of Policy and Legal Services; and *Chrestman Group, PLLC*, by: *Keith Chrestman*, for appellees.