Cite as 2026 Ark. App. 145

# ARKANSAS COURT OF APPEALS
## DIVISION III
#### No. CV-25-26

|  |  |
|---|---|
| ALEXANDER SULLIVAN, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES; CITY OF LITTLE ROCK; AND KEITH HUMPHREY, IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE, CITY OF LITTLE ROCK POLICE DEPARTMENT <br><br> APPELLANTS <br><br> V. <br><br> KENNETH RICHARDSON <br> APPELLEE | Opinion Delivered March 4, 2026 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTEENTH DIVISION [NO. 60CV-21-3504] <br><br> HONORABLE MORGAN E. WELCH, JUDGE <br><br><br> REVERSED AND REMANDED |

## ROBERT J. GLADWIN, Judge

Alexander Sullivan ("Sullivan"), in his individual and official capacities; the City of

Little Rock ("City"); and Keith Humphrey ("Humphrey"), in his official capacity as chief of

police, City of Little Rock Police Department (collectively "Appellants") bring this appeal

from the Pulaski County Circuit Court's October 28 and October 29, 2024 orders denying

in part Appellants' motion for summary judgment on appellee Kenneth Richardson's

("Richardson's") federal constitutional claims and denying Sullivan's assertion of qualified

immunity. Appellants contend that the circuit court erred as a matter of law in concluding

that material issues of fact remain regarding qualified immunity. They further argue that,

once qualified immunity is established, the remaining claims against them fail as a matter of law. We agree; accordingly, we reverse and remand.

I. *Facts and Procedural History*

On October 9, 2019, Sullivan and fellow Little Rock Police Department ("LRPD") Officer Gladina Harris ("Harris") responded to the Circle K on Colonel Glenn Road, Little Rock, Arkansas, regarding a report of an aggravated robbery. On arriving at the Circle K, Sullivan and Harris interviewed the victim, Donald Sampson, Jr. ("Sampson"). Sampson told them that he was in the Kroger parking lot across the road when a black male struck him in the face with a pistol, knocking him unconscious, and stole his wallet. Sampson described his assailant as an unknown black male wearing a red shirt and blue jeans. Sullivan then drove to the Kroger parking lot in search of the suspect.

While in the Kroger parking lot, Sullivan saw a black male matching the description provided by Sampson. Sullivan stopped the individual, later identified as Lee McClane ("McClane"). McClane provided Sullivan with his name and date of birth while both men stood in front of Sullivan's police vehicle. During the stop, McClane became agitated and argumentative, after which Sullivan placed McClane in handcuffs at the front of the police vehicle.

The investigation up to this point—from the initial interview with Sampson to the investigatory stop and handcuffing of McClane—is visible on the dashcam video in Sullivan's police vehicle. Sullivan then got into his police vehicle to verify McClane's identity. While

2

he was in his police vehicle and McClane was standing in front of it, McClane alerted Sullivan that an individual was taking pictures of him.

At this point, the interaction moves to the area beside and behind Sullivan's police vehicle. Although out of camera view, the audio on the video can be heard and is supplemented by descriptions given by both Sullivan and Richardson.

At about 4:30 p.m., Richardson was getting gas at the Kroger Fuel Center located on Colonel Glenn Road. While there, Richardson saw an LRPD officer, later identified as Sullivan, detaining a black male, later identified as McClane, in the area between Kroger and an apartment complex next to it. The area where Sullivan had McClane detained was not in a street, but it was in a public area used as a means of ingress and egress from the apartment complex to the Kroger and other public areas.

Richardson drove across the parking lot to an area closer to where Sullivan had McClane detained to see what was happening. While remaining in his car, Richardson used his phone to take pictures of the interaction. The parties agree that Richardson drove to within approximately thirty to thirty-five feet from Sullivan's police vehicle and parked. After McClane notified Sullivan that pictures were being taken, Sullivan noticed Richardson's brown Impala behind his police vehicle. Sullivan got out and told the individual, later identified as Richardson, who at that point was still inside his vehicle, to drive on. Sullivan told Richardson that McClane did not want Richardson taking his picture and again asked him to leave. Sullivan then got back into his police vehicle. Richardson informed Sullivan

3

that he did not have to leave because he was in a public place away from Sullivan and McClane and posed no threat to either of them.

This is where Sullivan's and Richardson's accounts conflict. Richardson alleges that Sullivan stopped what he was doing, left McClane handcuffed in front of his police vehicle, and approached Richardson. He claims that Sullivan walked the approximately thirty feet to the parked Impala and instigated the second encounter with Richardson. Sullivan says that Richardson got out of his car while Sullivan was still in the police vehicle and walked "to approximately a car length" behind Sullivan's police vehicle. What is clear from the audio recording is that Sullivan got back out of his police vehicle, a car door is heard closing, and without shouting, Sullivan engages with Richardson in the following exchange just as Sullivan's door audibly closes. According to the dashcam video, this exchange occurred at approximately 5:44 p.m.:

SULLIVAN:      Yes, sir? What sir?

RICHARDSON:   What did you say?

SULLIVAN:      Keep going.

SULLIVAN:      Keep going please.

SULLIVAN:      Right now you are posing a risk to me, go.

RICHARDSON:   Excuse me?

SULLIVAN:      Drive please, he (McClane) does not want you taking his picture.

SULLIVAN:      (exited his patrol unit and said) What sir?

RICHARDSON:   What did you say.

4

SULLIVAN:       Show me your hands please.

RICHARDSON:     I'll show you my hands.

SULLIVAN:       You are walking up on the police. You are apparently driving by this gentleman that I stopped because he is a possible suspect in an aggravated robbery.

RICHARDSON:     I'm meeting with the Chief tomorrow.

SULLIVAN:       That's fine, sir. You need to drive. You need to leave my traffic, I mean my stop and go.

RICHARDSON:     I was going.

SULLIVAN:       Sir. You need to go.

RICHARDSON:     I'm going to call the chief now.

SULLIVAN:       That's fine. You're more than welcome to but leave now. You are about to be under arrest.

SULLIVAN:       Leave.

RICHARDSON:     I'm not leaving.

SULLIVAN:       Sir, alright. Turn around and place your hands behind your back. Now I'm having to turn my attention away from the suspect over here that I handcuffed. Hey, everybody hang tight. I'm trying to do something really simple.

[Other voices in the background.]

RICHARDSON:     Hey close my door there, baby.

SULLIVAN:       Any guns, knives, or weapons?

RICHARDSON:     No, I'm a city director.

SULLIVAN:       Sir, do you have any ID on you?

5

RICHARDSON:        Yeah, in my wallet.

Sullivan then placed Richardson under arrest for violation of Arkansas Code Annotated section 5-54-102 (Supp. 2025), obstructing governmental operations. Sullivan handcuffed Richardson and placed him in the back seat of his police vehicle.

SULLIVAN:        Mr. Richardson, you're aware you can't roll up on the police and then encroach a subject stop and then refuse to leave, right?

RICHARDSON:        I was standing over there.

SULLIVAN:        You were over there creeping behind me. I'm the only officer on this call right now and I am stopping a possible aggravated robbery suspect and then your turning my attention from that because your sitting where I can't see your hands in a vehicle and the man says your videotaping him, you know what I'm saying?

RICHARDSON:        I was back there, I was not encroaching.

Richardson remained in the back of the police vehicle for approximately thirty minutes. During that time Sullivan continued verifying the identity of McClane and investigating the aggravated robbery as other LRPD officers arrived to assist. Sullivan ultimately cited Richardson and removed him from the police vehicle. As Sullivan informed Richardson about the charge of obstruction of governmental operations, the following exchange occurred:

RICHARDSON:        Cause I did not move fast enough.

SULLIVAN:        We are not going to discuss this sir.

RICHARDSON:        I'll discuss it with the Chief tomorrow.

The handcuffs were removed from Richardson, and he called Humphrey in front of Sullivan, telling him that he had another item to talk about with him.

Following this incident, the LRPD conducted an internal investigation into Richardson's arrest, summarized in a memorandum dated November 22, 2019. The investigation included a review of documents and videos and interviews of numerous witnesses. As a result of the investigation, the LRPD concluded that Sullivan's actions were lawful and proper, and the obstruction-of-governmental-operations charge against Richardson was subsequently nolle prossed.

On June 5, 2021, Richardson filed his complaint for damages—against Sullivan, in his individual and official capacities; the City; and Humphrey, in his official capacity as chief of police for the City of Little Rock. Richardson asserted Fourth and First Amendment claims against Sullivan, a *Monell*[1] claim against Humphrey, a *Monell* claim against the City, and a negligence/battery claim against Sullivan. On September 20, 2021, Appellants answered the complaint.

After lengthy delays and failure to move forward in this matter, the circuit court entered an order on October 10, 2024, requiring that Richardson's deposition be taken on or before October 18 and extending the summary-judgment deadline to October 22. On October 22, Appellants moved for summary judgment. On October 26, Richardson responded. On October 27, Appellants filed a response.

---

[1]A claim for permitting and maintaining a widespread custom of permitting excessive force. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

On October 28, the circuit court entered an order imposing sanctions for late response (specifically striking Richardson's state-law claims for battery and false imprisonment against Sullivan) and granting in part and denying in part Appellants' motion for summary judgment. Specifically, the circuit court's order states in relevant part:

> The Court observes [Richardson's] State claims were, in any event precariously perched, and likely to fall on Immunity or Qualified Immunity grounds, in any event.
>
> The First and Fourth Amendment complaints Plaintiff brings under 42 USC § 1983, are another matter, however. The City, as was part of its diligence, provided this Court with the dashcam video record of this event. The video is incomplete because the dashcam was stationary, and not facing the rear or sides of the vehicle, but the audio is more or less intact. After the Court's review, pursuant to Rule 56 ARCP, the Court is left with 'material questions of fact', including, but not limited to:
>
> 1.    What was the exact distance between the parties at critical times?
>
> 2.    Who engaged whom first?
>
> 3.    Who approached whom first?
>
> 4.    Did the city have a written policy about the rights of citizen onlookers to observe arrests and stops of third parties by police (*the amended order added the phrase "or was there an absence of such a policy"*)?
>
> 5.    (*new number 5. in amended order reads: "If there was no policy, is the absence of a policy itself or a 'custom' or policy?"*) *See e.g.*: City policies attached to Defense Motion.[2]
>
> 6.    What exactly did Mr. Richardson say or do that was contrary to any City "onlooker policy" that presented probable cause for arrest? (*this is number 6. in the amended order*).
>
> Rule 56 (2) ARCP provides:

---

[2]Attached as exhibits J and K to Appellants' motion for summary judgment.

(2) The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law on the issues specifically set forth in the motion. A partial summary judgment, interlocutory in character, may be rendered on any issue in the case, including liability.

The Court, in reviewing the video, and all "pleadings on file" concludes that material facts concerning the Constitutional Claims remain in dispute. In the interests of Justice, the Court thereafter reviewed [Richardson's] late filing as to the 1st and 4th Amendment claims and found the issues unresolved.

The Eighth Circuit case of *Walker v. City of Pine Bluff*, 414 F.3d 989 (8th Cir. 2005) was settled law, and 'clearly established', 14 years before the incident between Mr. Richardson, and Officer Sullivan. *See also Chestnut v. Wallace*, 947 F.3d 1085, 1089 (8th Cir. 2020).

Judge Morris Arnold wrote in *Chestnut*:

"In ruling for Walker, we explained that '[i]n a democracy, public officials have no general privilege to avoid publicity and embarrassment by preventing public scrutiny of their actions.' We noted that 'public police activity invariably draws a crowd of interested but benign on-lookers,' and we thought it 'preposterous' that a 'silent, noninterfering on-looker' could have distracted the officers from safely completing the traffic stop. We concluded that '[n]o reasonable police officer could believe that he had arguable probable cause to arrest such an on-looker in this situation, for obstruction of governmental operations or for any other purported crime,' so the district court properly had rejected the officer's request for qualified immunity. *Id*. at 992-93[.]"

[414 F.3d at p. 1090].

IT IS ORDERED that Summary Judgment is GRANTED as to the negligence and battery claims as to all Defendants. The Court FINDS there are material Issue of fact remaining for resolution by a jury, and the Motion for Summary Judgment as to the 1st and 4th Amendment Claims is DENIED as to all defendants. *(the amended order adds the following sentence in response to appellants' motion for clarification: "The Court specifically DENIES Separate Defendant Alexander Sullivan's CLAIM OF QUALIFIED IMMUNITY on the federal constitutional claims".)*

9

Appellants timely filed a joint notice of appeal, and this appeal followed.

## II. *Standard of Review*

Our supreme court recently reiterated the appropriate standard of review regarding

summary judgment—specifically as it relates to a motion based on qualified immunity.

> The law is well settled that summary judgment is to be granted by a circuit court only when there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Our review focuses not only on the pleadings but also on the affidavits and documents filed by the parties.

> A motion for summary judgment based on qualified immunity is precluded only when the plaintiff has asserted a constitutional violation, demonstrated the constitutional right is clearly established and raised a genuine issue of fact as to whether the official would have known that the conduct violated that clearly established right. Whether a party is immune from suit is purely a question of law and is reviewed de novo on appeal.

*Boyle Ventures, LLC v. City of Fayetteville*, 2025 Ark. 71, at 4, 711 S.W.3d 280, 283 (internal

citations omitted). In viewing the evidence in the light most favorable to the party resisting

the motion, we are not obliged to ignore incontrovertible evidence that is depicted on a

videotape. *Harris v. Parrish*, 2018 Ark. App. 348, at 3, 552 S.W.3d 475, 478 (citing *Wallingford

v. Olson*, 592 F.3d 888 (8th Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372 (2007), where the

Eighth Circuit reiterated that that although we view the facts and any reasonable inferences

in the light most favorable to the party resisting the motion, we cannot ignore incontrovertible evidence that clearly contradicts that party's allegations)).

### III. *Discussion*

### A. Qualified Immunity

Qualified immunity shields a government official from suit under 42 U.S.C. § 1983 if the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. The analysis asks (1) whether the facts show a violation of a constitutional right and (2) whether the right was clearly established at the time of the alleged misconduct. *See, e.g., Early v. Crockett*, 2014 Ark. App. 278, 436 S.W.3d 141.

A court may resolve the case on either prong. Even if a constitutional violation could be inferred, an officer is entitled to qualified immunity if the law did not clearly establish that the conduct was unlawful or if the officer had arguable probable cause for the arrest.

### 1. *Fourth Amendment–probable cause and arguable probable cause*

Richardson's primary claim is that his warrantless arrest violated the Fourth Amendment. A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least "arguable probable cause." *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011). An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest "are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Id.* at 523 (citing *Fisher v. Wal-Mart Stores, Inc.*, 619

11

F.3d 811, 816 (8th Cir. 2010) (citation omitted)). Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is "objectively reasonable." Under Arkansas law, a person commits obstructing governmental operations if he knowingly obstructs, impairs, or hinders the performance of a governmental function. Ark. Code Ann. § 5-54-102(a) (Repl. 2024).

The undisputed record—particularly Sullivan's dashcam audio—demonstrates that Richardson exited his vehicle and approached Sullivan during an active investigatory stop of a potentially armed aggravated-robbery suspect, refused repeated directives to leave, and diverted Sullivan's attention from the suspect. The audio evidence contradicts Richardson's assertion that he remained a distant observer and establishes that he entered Sullivan's immediate vicinity and continued the confrontation after being warned he was interfering.

This court has held that the interruption of officers engaged in an investigation can provide probable cause for obstruction. In *Nelson v. State*, 2013 Ark. App. 421, we held that repeatedly interrupting officers conducting witness interviews during a shooting investigation supplied probable cause for arrest under Arkansas Code Annotated section 5-54-102. Like the defendant in *Nelson*, Richardson injected himself into an ongoing investigation after being instructed to desist and thereby hindered Sullivan's ability to perform his duties. Under these circumstances, Sullivan had probable cause—or, at a minimum, arguable probable cause—to arrest Richardson for obstruction. Where arguable probable cause exists, qualified immunity applies even if a court later determines that

12

probable cause was lacking. Because Sullivan had arguable probable cause, Richardson cannot establish a violation of his Fourth Amendment right to be free from unlawful seizure.

The circuit court relied on *Walker*, 414 F.3d 989, and *Chestnut*, 947 F.3d 1085, in denying Sullivan's motion for summary judgment on the qualified-immunity issue. Those cases are materially distinguishable.

In *Walker*, the plaintiff silently observed a traffic stop from across the street, did not approach officers, and did not interfere with the stop. Officers left the scene of the stop and initiated contact with him. The Eighth Circuit held that no reasonable officer could believe probable cause existed under those circumstances. *Id.*

Similarly, in *Chestnut*, the plaintiff merely observed multiple traffic stops from a distance of thirty to forty feet across the street and did not approach or interfere. He was detained after officers became suspicious of his presence. *Id.*

Here, by contrast, Richardson did not remain a silent, distant observer. After Sullivan instructed him to leave, he exited his vehicle, approached Sullivan's police vehicle during an active investigation of a violent-crime suspect, engaged Sullivan in conversation, and refused to withdraw. The undisputed audio evidence demonstrates that his conduct diverted Sullivan's attention from a handcuffed suspect and created a safety risk.

Unlike the passive onlookers in *Walker* and *Chestnut*, Richardson affirmatively interfered with an ongoing investigation. Those cases therefore do not clearly establish that arresting Richardson under the instant circumstances would violate the Fourth Amendment.

At a minimum, a reasonable officer could believe that Richardson's conduct constituted obstruction under Arkansas law.

Under the totality of the circumstances reflected in the summary-judgment record—including the undisputed audio dash-cam evidence and the sequence of events it establishes—we conclude that Sullivan reasonably believed that Richardson was knowingly interfering with an active criminal investigation after being directed to leave the scene. Arkansas precedent recognizes that interruption of officers engaged in ongoing investigative duties may provide probable cause for an arrest for obstructing governmental operations. *See Nelson*, *supra*. At a minimum, that authority, coupled with the facts known to Sullivan at the time, supplied arguable probable cause to believe Richardson was committing the offense of obstruction. Because arguable probable cause is sufficient to entitle a law enforcement officer to qualified immunity, we hold that the record before us supports that Sullivan had arguable probable cause to arrest Richardson and is therefore entitled to qualified immunity on Richardson's Fourth Amendment unlawful-seizure claim.

### 2. *Excessive force*

Richardson also alleges that Sullivan used excessive force against him in effectuating the arrest. But our review of the record indicates that the only force employed was the placement of handcuffs on Richardson incident to the arrest. Richardson presented no evidence of physical injury, sought no medical treatment, and identified no lasting harm beyond the ordinary discomfort attendant to being handcuffed.

Claims of excessive force arising in the context of an arrest are analyzed under the objective-reasonableness standard of the Fourth Amendment. The question is whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. *See Graham v. Connor*, 490 U.S. 386 (1989).

The United States Court of Appeals for the Eighth Circuit—whose Fourth Amendment precedent governs our analysis—has consistently held that de minimis force resulting in only temporary discomfort or minor injury is insufficient to establish a constitutional violation. *See Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011) (citing *Wertish v. Krueger*, 433 F.3d 1062 (8th Cir. 2006) in which the Eighth Circuit held that tight handcuffing resulting in minor scrapes and bruising did not rise to the level of a constitutional violation). In *Chambers*, the court reiterated that minimal force causing only temporary discomfort does not offend the Fourth Amendment.

Here, Richardson produced no evidence that the handcuffs were applied in an abusive or unreasonable manner nor any evidence of injury beyond ordinary discomfort. There is no allegation of prolonged restraint, refusal to loosen overly tight restraints, or force applied after compliance. On this record, the force used was, at most, de minimis.

Given that routine handcuffing is a standard and lawful component of an arrest, and in the absence of evidence of injury or objectively unreasonable conduct, no clearly established law would have put Sullivan on notice that his actions violated the Fourth Amendment. Accordingly, because the record, viewed in the light most favorable to

15

Richardson, fails to demonstrate more than de minimis force, we hold that Sullivan is entitled to qualified immunity on Richardson's excessive-force claim and that the circuit court erred in denying summary judgment. We reverse and dismiss the excessive-force claim.

### 3. *First Amendment*

Richardson next contends that his arrest violated his First Amendment rights. Although members of the public may observe police activity occurring in a public place, that right does not extend to conduct that interferes with or obstructs an active investigation. *See* Ark. Code Ann. § 5-54-102 (criminalizing conduct that obstructs, impairs, or hinders law enforcement in the performance of their official duties).

The undisputed record shows that Richardson was arrested for obstructing governmental operations—not for recording police activity—and that he had ceased recording before the arrest. Because Sullivan had arguable probable cause to believe that Richardson was committing obstruction, the First Amendment does not provide a basis for liability.

### B. Remaining Claims Against Appellants

Where no constitutional violation by an individual officer is established, claims against supervisors and municipalities necessarily fail. *See, e.g.*, *Yang v. City of Little Rock*, 2019 Ark. 169, 575 S.W.3d 394. Because Sullivan is entitled to qualified immunity and committed no constitutional violation, Richardson cannot maintain official-capacity or municipal-liability claims against him, Humphrey, or the City.

16

IV. *Conclusion*

From our de novo review of the evidence in the record before us—including Sullivan's dashcam audio—in the light most favorable to Richardson, no genuine issue of material fact exists. Sullivan had, at a minimum, arguable probable cause to arrest Richardson for obstructing governmental operations in violation of section 5-54-102. Because no underlying constitutional violation can be established, the remaining official-capacity and municipal-liability claims necessarily fail. We therefore reverse and remand with instructions to enter summary judgment in favor of Appellants on all remaining claims.

Reversed and remanded.

WOOD and MURPHY, JJ., agree.

*Fuqua Campbell, P.A.*, by: *Annie Depper*, *David M. Fuqua*, and *John T. Adams*, for appellants.

*Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellee.